## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Sonstegard Foods Company,                     Civil No. 05-532 (DWF/AJB)

        Plaintiff,

                                          **MEMORANDUM**

v.                                             **OPINION AND ORDER**

Wellington Underwriting, Inc.,

        Defendant.

---

James C. Erickson, Esq., and Willard L. Converse, Esq., Jensen, Bell, Converse & Erickson, P.A., counsel for Plaintiff.

Thomas B. Caswell, III, Esq., and Lindsey A. Davis, Esq., Zelle, Hofmann, Voelbel, Mason & Gette LLP, counsel for Defendant.

---

## INTRODUCTION

The above-entitled matter came before the Court pursuant to Defendant Wellington Underwriting, Inc.'s ("Wellington") Renewed Motion for Adjudication of the Proper Loss Payment Methodology. For the reasons set forth below, the Court grants Wellington's motion.

## BACKGROUND

The essential facts surrounding this matter are set forth in the Court's Memorandum Opinion and Order dated May 21, 2007, and are incorporated herein by reference. In summary, Wellington insured Sonstegard Foods Company ("Sonstegard")—a corporation that produces dried egg product by processing bulk,

shelled, liquid eggs in a dryer and bag house—on an all-risk fire and extended property policy ("the Policy") from March 1, 2002 to March 1, 2003. On January 21, 2003, an explosion occurred in Sonstegard's dryer and bag house. This case arose out of Sonstegard's allegations that Wellington breached the Policy by denying coverage for costs to repair the dryer and bag house to gain permanent United States Department of Agriculture ("USDA") approval to produce edible egg product.

The matter was initially brought before the Court pursuant to Wellington's Motion for Summary Judgment. In its May 21, 2007 Order, the Court denied Wellington's motion, concluding that the referenced Law or Ordinance Exclusion is not part of the Policy and that the Civil Authority Provision, while part of the Policy, does not apply to bar coverage here. As to the Wear and Tear Exclusion, the Court concluded that it is unclear whether wear and tear caused the damage that prevents permanent production.

At oral argument regarding Wellington' Motion for Summary Judgment, Sonstegard admitted that it did not know what its measure of damages would be. (*See* Sonstegard's Mem. Opposing Wellington's Summ. J. Mot. and in Supp. of Sua Sponte Partial Summ. J. for Sonstegard at 12; Tr. at 28.) But Sonstegard did assert that the term "Agreed Value" in the "Optional Coverages" section of the Policy applies. Thereafter, Wellington brought this motion to determine what the proper loss payment methodology is under the Policy.

**DISCUSSION**

**I.      Contract Construction**

A court applies general principles of contract interpretation in construing insurance

contracts. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). The correct interpretation of a clause in an insurance policy is a question of law. *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994). Words in insurance contracts are given their plain and ordinary meaning. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). A court must consider the policy and its exclusions as a whole, and "the terms will not be so strictly construed as to lead to a harsh or absurd result." *Employers Mut. Liab. Ins. Co. v. Eagles Lodge*, 165 N.W.2d 554, 556 (Minn. 1969). Any ambiguity in the language of an insurance policy must be resolved against the insurer and in accordance with the reasonable expectations of the insured. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 35 (Minn. 1979).

## A. The Policy

Wellington asserts that the Loss Payment Provision in the Building and Personal Property Coverage section of the Policy is unambiguous and controls the methodology upon which the amount of insurance proceeds owed to Sonstegard will be determined. The Loss Payment Provision states the following:

> **4. Loss Payment**
> **a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:
> **(1)** Pay the value of lost or damaged property;
> **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;
> **(3)** Take all or any part of the property at an agreed or appraised value; or
> **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.
> **b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

(6/20/07 Affidavit of Thomas B. Caswell ("Caswell Aff."), Ex. 8 at 6 of 11 (emphasis in original).)

Based on Sonstegard's prior remarks during the summary judgment motion phase, Wellington anticipated that Sonstegard would assert that the Agreed Value Provision, and not the Loss Payment Provision, applies to determine the measurement of a covered loss.[1] However, in its answering memorandum, Sonstegard concedes that the "Agreed Value is not an issue" and that "Sonstegard certainly did not intend to infer that the loss was to be determined based on the 'Agreed Value' provision." (Sonstegard's Answering Mem. on Damages at 2.) Instead, Sonstegard asserts that the valuation of the covered loss should be determined by "actual cash value" at the time of the loss. Sonstegard does not address the relationship between the Loss Payment Provision and the application of "actual cash value."

Wellington responds asserting that it does not dispute that the "valuation" of property under the Policy will be at "actual cash value." However, Wellington asserts the "Valuation" provisions do not negate the Loss Payment Provision. In other words, Wellington asserts that while the Policy provides for property adjustment on an actual cash value basis, this does not mean that the entire actual cash value for the property is

---

[1]     Wellington asserts that the "Agreed Value" relates only to the Policy's coinsurance provision and does not determine the amount of the covered loss owed under the Policy. Specifically, Wellington asserts that the Agreed Value Provision provides a method for calculating the maximum amount it is obligated to pay for a covered loss, but the provision does not explain how the covered loss is to be valued or paid.

automatically owed upon a loss.  Instead, Wellington contends that the Loss Payment

Provision controls how to determine how to satisfy any payment obligations.

Further, Wellington asserts that it did not choose option 4.a.(1) from the Loss

Payment Provision, which requires the insurer to "[p]ay the value of lost or damaged

property."  (Caswell Aff., Ex. 8 at 6 of 11.)  Under 4.a.(1), Wellington concedes that the

Valuation Provisions would come into play and require that such valuation be made on an

actual cash value.  Instead, Wellington points out that it chose option 4.a.(2), which

requires the insurer to "[p]ay the cost of repairing or replacing the lost or damaged

property."  (*Id*.)  Therefore, Wellington asserts that according to this option, it may be

required to repair the property, but those repairs may be at a lesser cost than the actual

cash value for the property.[2]

In the Building and Personal Property Coverage Form, the Policy sets out terms

and conditions for how the payment for a loss will be measured in the Loss Payment

Provision.  The provision gives the insurer four options to choose from in order to satisfy

its payment obligations.[3]  Here, Wellington elected the option contained in 4.a.(2), which

---

[2]      Sonstegard also asserts that "actual cash value" means reproduction costs less
depreciation.  Wellington disagrees, asserting that courts in Minnesota have adopted a
more flexible test allowing "any evidence logically tending to establish the actual cash
value[,]" *Brooks Realty, Inc. v. Aetna Ins. Co.*, 149 N.W.2d 494, 500 (Minn. 1967), which
could include evidence such as the actual market value of the equipment and the cost of
the repairs.  Because Wellington chose a loss payment option that does not require the
valuation of the lost or damaged property, the Court notes that a determination of what
"actual cash value" means need not be made.

[3]      Although Wellington maintains that it has met its payment obligations under the
option that it chose in the Policy, on the record before the Court, however, genuine issues
of material fact still exist regarding whether the dryer and bag house were restored to

(Footnote Continued on Next Page)

obligates Wellington to "[p]ay the cost of repairing or replacing the lost or damaged property, subject to [subsection] **b**."  (Caswell Aff., Ex. 8 at 6 of 11 (emphasis in original).)  Subsection "b" provides that "[t]he cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property."  (*Id*.)

The Court agrees with Wellington and concludes that the Loss Payment Provision clearly and unambiguously sets forth the available loss payment methodologies from which Wellington may choose from to satisfy its payment obligations.[4]  To construe the Policy in such a way as to require payment of the actual cash value of the property regardless of the option chose from the Loss Payment Provision would require the Court to ignore the unambiguous terms of the Policy's Loss Payment Provision.  Such a construction is improper.  *See Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995) ("A contract must be interpreted in a way that gives all of its provisions meaning."); *SCSC Corp. v. Allied Mut. Inc. Co.*, 536 N.W.2d 305, 311 (Minn. 1995) ("The policy must be read as a whole, and unambiguous language must be

---

(Footnote Continued From Previous Page)
their pre-loss condition.  Wellington does not dispute that this factual issue remains for trial.

[4]      The Court notes that it need not determine the applicable policy limits at this time.  Instead, such a determination is more appropriately taken up in a post-trial motion.

Further, the Court disagrees with Sonstegard's assertion that there is a conflict between the language of the Policy's Civil Authority Provision and sub-section "b" of the Loss Payment Provision.  The Court previously found that the Civil Authority Provision

(Footnote Continued on Next Page)

6

accorded its plain and ordinary meaning.").

## CONCLUSION

The Court continues to offer assistance to the parties in negotiating a resolution to their dispute.  If the parties wish to schedule a settlement conference, they should contact Kathy Thobe, Calendar Clerk for Magistrate Judge Arthur J. Boylan, at (651) 848-1210. If the Court can be of any further assistance in this matter, the parties should contact Gina Olsen, Calendar Clerk for Judge Donovan W. Frank, at (651) 848-1296.

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Wellington's Renewed Motion for Adjudication of the Proper Loss Payment Methodology (Doc. No. 71) is **GRANTED.**

Dated:  October 2, 2007                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          Judge of United States District Court

---

(Footnote Continued From Previous Page)
"does not apply to bar coverage in this case."  (5/21/07 Order at 11.)  In addition, any fact issues as to the application of sub-section "b" can be resolved at trial.